**Tresa K. ROSS, Appellant,**

v.

**ROYAL GLOBE INSURANCE COMPANY, Appellee.**

No. 79–1338.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1979.

Decided Jan. 7, 1980.

Gerland P. Patten, Patten, Brown, Leslie & Davidson, Little Rock, Ark., for appellant.

Robert L. Henry, III, Barber, McCaskill, Amsler, Jones & Hale, Little Rock, Ark., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and HUNTER, District Judge.*

ELMO B. HUNTER, District Judge.

This is an appeal from a summary judgment entered in favor of the Royal Globe Insurance Company ["Royal Globe"] in a suit to recover on a homeowners insurance policy brought by Tresa K. Ross ["Ms. Ross"], the daughter of the insureds, Darrell Ross and his wife, Tresa Ross. We reverse and remand with instructions.

* The Honorable Elmo B. Hunter, District Judge for the Western District of Missouri, sitting by designation.

The complicated matter in dispute here is the applicability of an exclusion clause in Royal Globe's insurance contract with Darrell and Tresa Ross.

On May 9, 1972, Darrell and Tresa Ross entered into a one year insurance contract with Royal Indemnity Insurance Company, Policy No. RKB 74–80–77 [the "1972–73 policy"] for general homeowners coverage. On May 28, 1972, Darrell Ross purchased a fourteen foot boat with a thirty-five horsepower outboard motor. He called his insurance agent, Mr. Dale Ward, the next morning to inquire about liability coverage. Mr. Ward apparently informed Mr. Ross that "you are covered".[1] On May 9, 1973, Royal Globe issued a one year homeowners policy, No. PKB 26–60–18, [the "1973–74 policy"] to Darrell and Tresa Ross; and on May 9, 1974, Royal Globe issued a three year homeowners policy, No. PKB 485377, [the "1974–75 policy"] to Darrell and Tresa Ross.

On June 15, 1975, Ms. Ross was injured in an accident involving the boat and motor purchased by Darrell Ross. The boat was being operated by Ms. Ross' boyfriend, Gordon Miller. Ms. Ross brought suit against Royal Globe in the Circuit Court of Pulaski County, Arkansas, claiming that her injuries were an insured event and that Miller was covered by the policy's omnibus provisions.[2] Royal Globe filed a petition for removal of this cause to the United States District Court for the Eastern District of Arkansas on diversity grounds. The petition for removal was granted.

The district court, in two separate orders, granted Royal Globe's motion for summary judgment. In the first order entered on February 20, 1979, the district court concluded that Ms. Ross' contentions regarding any waiver, estoppel or oral modification of the policy on account of the agent's statement must fail under Arkansas law. In response to a motion to set aside the judgment, the district court addressed itself to Ms. Ross' position that the exclusion in the

insurance policy did not exclude from liability coverage her injuries resulting from the boating accident. The district court seemingly "reformed" or "corrected" what it viewed to be a "mistake" in the drafting of the exclusion clause, and denied Ms. Ross' motion.

The exclusion in question here is indeed unusual. The relevant portions appeared in the 1974–75 policy as follows:

This policy does not apply . . . to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft . . . powered by any outboard motor(s), singly or in combination of more than 25 total horsepower, if such outboard motor(s) is owned by any Insured at the inception of this policy and not endorsed hereon, unless the Insured reports in writing to this Company within 45 days after acquisition his intention to insure the outboard motor or combination of outboard motors, ownership of which was acquired prior to the policy term.

The district court concluded that the exclusion, as drafted, was "nonsensical" and "ridiculous". Further, the district court rejected Ms. Ross' reading of the clause insofar as the language is susceptible of the interpretation that the exclusion applies only to watercraft acquired prior to the inception of the policy. We do not agree. Under Arkansas law, it has long been true that an insurer may contract with its insured on any conditions or basis whatsoever, limited only by public policy and/or statutory constraints. See, M. F. A. Mutual Insurance Co. v. McKinley, 245 Ark. 326, 432 S.W.2d 484 (1968); M. F. A. Mutual Insurance Co. v. Bardshaw, 245 Ark. 95, 431 S.W.2d 252 (1968); Aetna Casualty & Surety Co. v. Etoch, 174 Ark. 409, 295 S.W. 376 (1927); and Southern Farm Bureau Casualty Insurance Co. v. United States, 395 F.2d 176 (8th Cir. 1968). Nothing about this exclusion indicates to us, and no argument

---

1. The insurer denies the conversation. For purposes of the summary judgment dispositions, the district court accepted the plaintiff's version of the facts.

2. There is no issue in this appeal regarding the validity of Ms. Ross' omnibus theory.

has been made, that it contravenes the law or public policy of the state of Arkansas.

As well, we note that Royal Globe clearly indicated in its brief that the exclusion was not drafted so as to encompass watercraft acquired after the inception of the policy.[3] Also, in its brief, Royal Globe specified the type of situation that the exclusion was intended to cover. Specifically, the exclusion would apply to a situation where an individual applies for insurance, next acquires a boat, and is then issued the policy. At this juncture, the individual would have forty-five days after acquisition of the boat to forward written notice to Royal Globe of an intention to insure or, failing this, the exclusion would become operable. Moreover, the exclusion would not apply in a converse situation where the policyholder acquired a boat after the inception date of the policy. Whatever the wisdom of such a peculiar scheme, we cannot alter the terms of an insurance contract merely because they appear odd. *See generally, J. B. Kramer Grocery Co., Inc. v. Glen Falls Insurance Co.,* 497 F.2d 709 (8th Cir. 1974); *State Farm Mutual Automobile Insurance Co. v. Pennington,* 324 F.2d 340 (8th Cir. 1963); and *Continental Casualty Co. v. Hawkins,* 236 Ark. 302, 365 S.W.2d 722 (1963).

Furthermore, the district court proposed at least three possible constructions of the exclusion and then decided to "reform" the exclusion in such a manner as to deny coverage. In reaching its result, the district court did not recognize the applicability of perhaps what can be termed a benchmark principle in cases involving judicial construction of insurance exclusions; *i. e.,* that ambiguity in an insurance exclusion is to be construed strictly against the insurer with all reasonable doubts as to interpretation to be resolved in favor of the insured. *See,*

*State Farm Mutual Automobile Insurance Co. v. Traylor,* 562 S.W.2d 595 (Ark.1978); *Union Bankers Insurance Co. v. National Bank of Commerce of Pine Bluff,* 241 Ark. 554, 408 S.W.2d 898 (1966); and *Aetna Casualty & Surety Co. v. Stover,* 327 F.2d 288 (8th Cir. 1964). We feel that given the possible conflicting interpretations of this exclusion, the district court should have adopted that construction that most favored the insured. This is especially so in a case such as this where the insured had no part in the preparation of the contract. *See, State Farm Mutual Automobile Insurance Co. v. Traylor, supra; Security Insurance Co. of Hartford v. Owen,* 252 Ark. 720, 480 S.W.2d 558, *appeal after remand,* 255 Ark. 526, 501 S.W.2d 229 (1972); *Aetna Casualty & Surety Co. v. Stover, supra.*

The district court chose not to follow this well honed principle of construction because of its belief that taken within its context, the exclusion, as written, must have been a mistake. While this exclusion does appear in a marked off section of the policy captioned "exclusions," it is clear to us from a careful reading of the entire section that many of the provisions therein are not exclusions at all, but rather, exceptions to the exclusions. As such, the district court's determination that the exclusion must have been a drafting mistake is not supported in the record and appears to be incorrect in light of Royal Globe's position that the exclusion was not intended to apply to "after-acquired" watercraft. In this posture, we do not have to consider the appropriateness of the district court's use of "reformation" or "correction" theories in a case of unilateral mistake by the insurer in a non-negotiated, form contract. *See, Robinson v. Home Indemnity Co.,* 316 F.Supp. 129 (E.D. Ark.1970), *aff'd,* 438 F.2d 1273 (8th Cir. 1971); and *Barton-Mansfield Co. v. Wells,* 183 Ark. 174, 35 S.W.2d 337 (1931).

---

**3.** We quote the following language from Royal Globe's brief:

> The fact that the literal language of [the exclusion] does not deal with a watercraft acquired after the inception of the policy term does not affect or negate the application of the exclusion under the facts in the present case . . . [The exclusion] . .

is a limitation contained in the contract of insurance between the parties and is entitled to application under the undisputed facts in this case even though the district court may be puzzled as to why it does not apply to after-acquired watercraft. pp. 10–11 of Royal Globe's brief.

■ The more troubling question in this appeal is whether the 1974–77 policy is merely a renewal of the 1972–73 policy or is an entirely new, distinct policy issued by a different company. Under the literal terms of the exclusion, the watercraft would have been acquired prior to the inception of the 1974–77 policy and the insured would not be in compliance with the forty-five day notice provision. Ms. Ross' contention is that Royal Indemnity and Royal Globe are both companies within the same "group" and that all of the policies have exactly the same exclusion and renewal provisions. Therefore, she would have us treat all three policies as one. Royal Globe argues that all three policies are different in their terms and that Royal Indemnity and Royal Globe are not the "same" company for purposes of renewal.[4] Under Arkansas law, it is clear that where a renewal is pursuant to specified renewal provisions in the contract, the renewal is treated simply as an extension of the first policy. *See, State Farm General Insurance Co. of Bloomington v. Chambers*, 260 Ark. 637, 543 S.W.2d 470 (1976); *Aetna Insurance Co. v. Short*, 124 Ark. 505, 187 S.W. 657 (1916); *Southern Farm Bureau Casualty Insurance Co. v. United States, supra*; and *generally*, J. Appleman, Insurance Law & Practice § 7648 (1976).[5]

The first insurance contract in *Chambers* possessed an automatic renewal clause that operated to renew the contract upon payment of a premium for the ensuing year.

The record here contains a copy of just the 1974–77 contract. While this policy contains what appear to be automatic renewal provisions on Attachment H–O 206, there is no evidence in the record that the 1972–73 policy possessed similar language.[6] Also, the Arkansas court in *Chambers* did not confront a renewal situation involving two insurance companies that apparently are members of the same group of insurance companies. Without further factual inquiries into these matters, we are unable to decide the ultimate issue of whether the latter two policies here are genuine renewals based on renewal provisions in the 1972–73 policy.

To be exact, it must be determined (1) whether the 1972–73 policy contained the same exclusion clause; (2) whether the 1972–73 policy had a renewal clause; and (3) whether Royal Indemnity is to be considered the same insurance firm as Royal Globe for the purposes of determining if the 1974–77 policy is an extension of the 1972–73 policy.[7]

In view of these disputed factual issues, this case was not in a proper posture for the district court to have granted summary judgment.

Therefore, we reverse the summary judgment of the district court and remand this cause for further proceedings consistent with this opinion.

---

4. Regrettably, the two earlier policies are not included in the record before us. We do not know if they were actually in evidence and before the district court at the time it granted summary judgment in favor of Royal Globe.

5. In a recent opinion of this Court, we recognized that under Arkansas law, an insured has a right to recover against a "contestable" or "suicide" clause in a second policy even in a situation where the first insurance policy has been supplanted by the second. *Fisk v. Security Life and Trust Co.*, 575 F.2d 1242 (8th Cir. 1978). Further, Judge Van Oosterhout noted in the same opinion that the current majority thinking on the Arkansas Supreme Court "reflects an extremely liberal attitude . . . in allowing recovery against insurance companies in questionable situations." 575 F.2d 1242 at 1247, n.1.

6. Further, the designated record is devoid of any evidence that the 1972–73 policy contained the same exclusion clause. Nevertheless, the district court apparently concluded that the identical exclusion clause was present in the 1972–73 policy. *See*, p. 1 of the district court's first Memorandum and Order.

7. Given our foregoing conclusion that the exclusion here does not apply to after-acquired watercraft, we find it unnecessary to reach Ms. Ross' alternative arguments concerning waiver. However, should these factual issues be determined favorably to Royal Globe, and Ms. Ross should again assert her waiver theories, we would be inclined to accept the position of the district court in its well reasoned first Memorandum and Order.